IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| Anthony Donte Collier, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER DENYING MOTION TO** |
| | ) | **VACATE, SET ASIDE, OR** |
| vs. | ) | **CORRECT SENTENCE** |
| | ) | |
| United States of America, | ) | Case No. 3:20-cv-239 |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Anthony Donte Collier, | ) | Case No. 3:16-cr-194-1 |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Anthony Donte Collier's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed on December 21, 2020. Doc. No. 413. The Government responded in opposition to the motion on April 12, 2021. Doc. No. 418. Collier filed a reply on May 13, 2021 (Doc. No. 421) and a supplement to his motion on June 1, 2021 (Doc. No. 423). For the reasons below, the motion is denied.

**I.     BACKGROUND**

In 2015, Collier was on supervised release in Minnesota for a prior Minnesota state crime. See Doc. No. 341, pp. 25-26. After several incidents, including absconding, Collier's supervising officials suspected he was engaging in the business of prostitution. Id. pp. 27, 41-44, 49-50. As a result, the authorities began an exhaustive investigation into Collier's activities, which ultimately culminated in, among other things, obtaining and executing a November 16, 2015 search warrant

(Doc. No. 418-3) on Collier's cell phone and laptop computer.  The search warrant was supported by an affidavit by Detective Shawn Krebsbach ("Detective Krebsbach"), a detective in Clay County, Minnesota.  Id.  Eventually, after further investigation, authorities tracked and connected Collier with several women who were engaging in commercial sex acts.

As a result of the investigation, a federal grand jury indicted Collier.  Doc. No. 1.  In March 2017, a grand jury returned a seven-count second superseding indictment against Collier.  Doc. No. 142.  The second superseding indictment charged Collier with the following: one count of conspiracy to violate 18 U.S.C. §§ 1952(a)(3) and 2, interstate travel and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 371; five counts of sex trafficking and attempted sex trafficking in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594(a); and, one count of attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1).  Id.

From the outset of his case, and as particularly relevant to this motion, Collier's representation by attorney William Kirschner ("Kirschner") presented unusual issues and difficulties.  By way of example, at his initial appearance on November 3, 2016, Collier requested permission to proceed with "hybrid representation," where Collier would proceed pro se with the addition of Kirschner's representation.  Doc. No. 39.  That request was denied, and Kirschner was appointed as Collier's attorney.  Id.  However, throughout the duration of the case, Collier repeatedly filed motions to appear pro se (Doc. Nos. 98, 101), and then changed course, asking that the Court reappoint Kirschner.  Doc. No. 144.

This pattern continued through the eve of trial.  On March 28, 2017, Collier again requested to appear pro se with Kirschner acting as co-counsel.  Doc. No. 167.  The Court gave Collier the

option to proceed to trial representing himself or accepting Kirschner's representation.  Doc. No. 167.  Collier chose the latter.  Id.

Trial began on April 4, 2017.  On day three of the trial, Collier again moved to proceed pro se, and the Court granted the motion.  Doc. No. 274, pp. 483-501.  Six days later, Collier again reversed course and asked the Court to reappoint Kirschner to represent him for the remainder of the trial.  Doc. No. 280, pp. 1737-38.

After three weeks of trial, the jury convicted Collier on counts one through six – conspiracy, interstate and foreign travel or transportation in aid of racketeering enterprises, sex trafficking, and attempted sex trafficking – and acquitted Collier on count seven – witness tampering.  Doc. No. 208.

After trial, Collier moved for new counsel, and Kirschner moved to withdraw as counsel.  See Doc. No. 357.  Noting the attorney-client relationship was irretrievably broke, the district court appointed Collier new counsel for sentencing, attorney Kerry Rosenquist ("Rosenquist").  Id.  Collier initially proceeded to sentencing with Rosenquist, but then once again chose to proceed pro se at sentencing without standby counsel.  Doc. Nos. 258, 262, 318.

At sentencing, after factoring in enhancements, the Court and the presentence investigation report ("PSIR") arrived at a total offense level of 45.  Doc. No. 306, ¶ 52.  Accordingly, Collier's total offense level was a 43 – the highest offense level possible.  Id. ¶ 55.  Collier was also designated in criminal history category VI – again, the highest criminal history category possible.  With an offense level of 43 and a criminal history category VI, the United States Sentencing Guideline ("USSG") range for Collier was life imprisonment.  Id. ¶ 114.  On December 21, 2017, the Court sentenced Collier below the guideline range, sentencing him to 60 months' imprisonment

on count one and 40 years imprisonment on counts two through six, all counts to run concurrently. Doc. No. 325.

After sentencing, Collier, with the assistance of a third attorney, attorney Chad McCabe ("McCabe"), pursued a direct appeal. The Eighth Circuit Court of Appeals issued its judgment and opinion affirming Collier's sentence on August 1, 2019 (Doc. No. 379), and a mandate was issued on October 2, 2019. Doc. No. 386. Collier timely filed the instant 28 U.S.C. § 2255 motion on December 21, 2020. Doc. No. 413.

## II.  LEGAL STANDARD

A motion under 28 U.S.C. § 2255 affords relief "in several circumstances, including cases shown to contain jurisdictional errors, constitutional errors, and errors of law." Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (citing 28 U.S.C. § 2255(b)). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Fletcher v. United States, 858 F.3d 501, 505 (8th Cir. 2017) (quoting Jennings v. United States, 696 F.3d 759, 762 (8th Cir. 2012)). An evidentiary hearing is required unless the allegations in the motion are inherently incredible, contradicted by the record, merely conclusory, or would not entitle the petitioner to relief even if true. Roundtree v. United States, 751 F.3d 923, 926-27 (8th Cir. 2014). The movant bears the burden to demonstrate an entitlement to relief. Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019).

Collier bases his § 2255 motion on three claimed violations of his Sixth Amendment right to effective assistance of counsel. To obtain relief on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). For the first prong, a petitioner must establish constitutionally deficient representation, meaning counsel's performance fell below an objective standard of reasonableness.

4

Meza-Lopez v. United States, 929 F.3d 1041, 1044 (8th Cir. 2019). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Courts view the representation from counsel's perspective at the time of the alleged error to avoid the effects of hindsight and second-guessing. Kemp v. Kelley, 924 F.3d 489, 500 (8th Cir. 2019). A petitioner must overcome a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Camacho v. Kelley, 888 F.3d 389, 394 (8th Cir. 2018). Strategic decisions made after a thorough investigation of the law and facts are virtually unchallengeable. United States v. Orr, 636 F.3d 944, 950 (8th Cir. 2011).

To satisfy the second prong, a petitioner must demonstrate that prejudice resulted from the deficient representation. Strickland, 466 U.S. at 687. To do so, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Adejumo v. United States, 908 F.3d 357, 361 (8th Cir. 2018) (quoting Strickland, 466 U.S. at 694). A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). When evaluating the probability of a different result, courts view the totality of the evidence to gauge the effect of the error. Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).

Where a petitioner raises multiple ineffective assistance of counsel claims, each claim must be examined independently rather than collectively. Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002) (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Cumulative error will not justify habeas relief. Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

### III. DISCUSSION

In his motion, Collier raises three ineffective assistance of counsel claims. First, Collier argues that Kirschner had an actual conflict of interest in representing Collier. Second, he argues that Kirschner was ineffective for failing to request a Franks hearing to dispute evidence presented by Detective Krebsbach in the November 16, 2015 search warrant affidavit. Finally, Collier argues McCabe was ineffective for failing to challenge the district court's sentencing guideline calculation on appeal. The Court addresses each claim below.

#### A. Conflict of Interest

For his first claim, Collier alleges that Kirschner had an actual conflict of interest in representing him. According to Collier, Kirschner "withheld proffers," which limited Collier's ability to cross examine witnesses while he acted pro se during trial. Collier also argues attorney Kirschner had an actual conflict of interest due to a dispute over legal fees relating to prior representation. The Government notes that Collier has failed to identify any conflict of interest. The Court agrees with the Government.

As discussed above, in Strickland, the Supreme Court placed the burden on defendants to establish a violation of a defendant's Sixth Amendment right to effective assistance of counsel. See Strickland, 466 U.S. at 688. Before Strickland, though, the United States Supreme Court decided Cuyler v. Sullivan, 446 U.S. 335 (1980). In Cuyler, the Supreme Court held that prejudice may be presumed if a defendant, who raised no objection at trial, can show "an actual conflict of interest [that] adversely affected his lawyer's performance." Id. at 348. In other words, if a defendant can show defense counsel "actively represented conflicting interests" and that conflict "adversely affected his lawyer's performance," the defendant need not demonstrate prejudice in order to obtain relief. Id. at 349-50.

Critically though, Cuyler has been only been applied in joint representation cases, where counsel jointly represents multiple parties. See Morelos v. United States, 709 F.3d 1246, 1252 (8th Cir. 2013). The Eighth Circuit Court of Appeals has not decided whether Cuyler applies to all actual conflict of interest cases. Id.; see also United States v. Young, 315 F.3d 911, 914 n.5 (8th Cir. 2003). Because Cuyler traditionally only applies in situations of joint representation, which was not the situation between Collier and Kirschner, the Court finds Cuyler of limited value to Collier's conflict of interest claim.

Under either standard, however, whether Strickland or Cuyler, Collier has not identified an actual conflict of interest or that Kirschner's performance fell below an objective level of reasonableness. To the extent Collier argues an alleged dispute over legal fees created a conflict of the interest, the law rejects his position. United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997) (holding a dispute over legal fees, without more, does not give rise to an actual conflict of interest). Additionally, there is nothing in the record to suggest Kirschner was representing conflicting interests or engaged in joint representation, which is fatal to Collier's conflict of interest claim. To be sure, it is clear from the record that there was ample "conflict" between Collier and Kirschner, as evidenced by Collier's repeated back and forth motions to appear pro se, then have Kirschner reappointed; however, Collier improperly conflates "conflict" with a showing of an "actual conflict of interest," as that term is legally defined. The Court finds nothing in the record to support a showing of a conflict of interest or that Kirschner's performance fell below an objective level of reasonableness.

Moreover, and relatedly, Collier cannot establish any adverse effect or prejudice. Indeed, even if Collier did demonstrate an actual conflict of interest, which he has not, Collier chose to proceed pro se without Kirschner at several points throughout the case and at trial. To the extent

7

Collier alleges a conflict of interest prevented Collier from effectively cross-examining witnesses, Collier's claim fails, because it does not show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Adejumo, 908 F.3d at 361 (emphasis added).

Collier offers nothing more than vague, conclusory, and unsubstantiated allegations that Kirschner had a conflict of interest, and as such, Collier fails to satisfy the Strickland standard. Without more, the Court concludes an evidentiary hearing is unwarranted and denies Collier's conflict of interest ineffective assistance of counsel claim against Kirschner. See Thompson v. United States, 5:16-cv-05035, 2018 WL 8733338, at *45 (D.S.D. Mar. 16, 2018) ("Vague and conclusory allegations of ineffective assistance which are grounded upon an alleged conflict of interest are insufficient to warrant an evidentiary hearing on a § 2255 motion.").

### B.    Franks Hearing

For his second claim, Collier argues Kirschner was ineffective for failing to move for a Franks hearing to challenge the November 16, 2015 search warrant affidavit from Detective Krebsbach.  According to Collier, the search warrant affidavit contained allegedly false information and that the warrant to search his cell phone contained false information.  The Government responds that Kirschner "did not render deficient performance because there was no evidence that would have warranted a Franks hearing." Doc. No. 418, p. 23.  The Court agrees.

"A defendant may obtain a Franks hearing if (1) he makes a 'substantial preliminary showing' that the affiant intentionally or recklessly included a false statement in the warrant affidavit, and (2) the false statement was 'necessary to the finding of probable cause.'" United States v. Shockley, 816 F.3d 1058, 1061 (8th Cir. 2016) (quoting United States v. Jacobs, 986 F.2d 1231, 1233-34 (8th Cir. 1993); Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).  "'This

8

substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements.'" United States v. Mayweather, 993 F.3d 1035, 1043 (8th Cir. 2021), reh'g denied (May 19, 2021) (quoting United States v. Gonzalez, 781 F.3d 422, 430 (8th Cir. 2015)). "A mere allegation standing alone is not enough. Allegations of negligence or innocent mistake are insufficient." Id. (cleaned up).

Collier raises two primary arguments in support of this claim.[1] First, Collier argues that testimony at the suppression hearing revealed false statements in the search warrant affidavit. Doc. No. 413-1, p. 18. Second, Collier argues that "the affidavit also purported that hotel staff suspected prostitution." Id. at p. 19. Collier's claims are conclusively refuted by the record.

A careful review of the transcript from the motion to suppress evidence hearing and the text of the search warrant affidavit refute Collier's claims as to the search warrant affidavit. Notably, there was no misrepresentation by Detective Krebsbach in the search warrant affidavit that hotel staff suspected the hotel room at issue was being used for prostitution. See Doc. No. 418-3. Additionally, the testimony at the suppression hearing does not reveal false statements in the search warrant affidavit. See Doc. No. 341. Contrary to Collier's assertions, the transcript and record confirm Detective Krebsbach's affidavit is consistent with the statements from hotel staff. Id.

Again, Collier has failed to provide any specific allegations to support why a Franks hearing may have been warranted, and as a result, Kirschner could not have been deficient in failing to request a Franks hearing. It cannot be ineffective assistance not to raise a meritless

---

[1] Collier technically raises five arguments in support of his Franks hearing claim. He numbers his arguments as 1, 2, 4, 5, and 6. Doc. No. 413-1, pp. 18-19. However, the second, fourth, and fifth claims are irrelevant to the Franks hearing analysis, as they primarily challenge chain of custody and the timing of the searches of Collier's cell phone and laptop computer.

argument. Larson v. United States, 905 F.2d 218, 219 (8th Cir. 1990); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994). Collier's conclusory allegations with no supporting facts fall short of establishing that Kirschner's failure to request a Franks hearing "fell below an objective standard of reasonableness." Instead, the record reveals that probable cause supported the issuance of the search warrant, there was no misrepresentation or false statement made on Detective Krebsbach's search warrant affidavit, and that Kirschner's decision not to request a Franks hearing was reasonable.

Accordingly, Collier has not shown deficient performance by Kirschner to support his claim of ineffective assistance of counsel for failing to request a Franks hearing. Because Collier has not shown that Kirschner's performance was deficient regarding this issue, there is no need to address the second Strickland prong of prejudice. United States v. Walker, 324 F.3d 1032, 1040 (8th Cir. 2003). Thus, Collier's second claim for ineffective assistance of counsel against Kirschner is denied.

### C. Sentencing Guidelines Calculation

Finally, Collier argues his appellate counsel, attorney McCabe, was ineffective for failing to object to or challenge the Court's guideline calculation on direct appeal. Specifically, Collier argues his total offense level should have been a 42, rather than a 43. To that end, in his reply brief, Collier cites several alleged sentencing guideline calculation errors that he believes McCabe should have raised on appeal. However, all the arguments are without merit, and ultimately, Collier cannot demonstrate prejudice.

To prove an ineffective assistance of counsel claim as to appellate counsel, a defendant must show "(1) his [appellate] attorney's performance failed to confirm to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor

performance." Donnell v. United States, 765 F.3d 817, 821 (8th Cir. 2014). Prejudice in the sentencing context requires a petitioner to demonstrate a reasonable probability that he "would have received a shorter sentence if counsel had not been ineffective." United States v. Parrott, 906 F.3d 717, 720 (8th Cir. 2018) (per curiam) (citing Winfield v. Roper, 460 F.3d 1026, 1033 (8th Cir. 2006)).

First, Collier argues that the Court erred in applying USSG § 2G1.3(a)(1), and that the Court should have applied USSG § 2G1.3(a)(2). USSG § 2G1.3(a)(1) applies a based offense level of 34 "if the defendant was convicted under 18 U.S.C. § 1591(b)(1)." On the other hand, USSG § 2G1.3(a)(2) applies a base offense level of 30 "if the defendant was convicted under 18 U.S.C. § 1591(b)(2)." Collier was convicted under 18 U.S.C. § 1591(b)(1). Doc. No. 208, p. 5. Thus, without question, applying a base offense level of 34 pursuant to USSG § 2G1.3(a)(1) was correct.

Second, Collier's argument that the Court erred in applying a 2-level enhancement as to count six for "vulnerable minor" fails. The enhancement was not applied as to a "vulnerable minor" as Collier states it. Doc. No. 413-1, p. 31. Rather, the enhancement is for "vulnerable victim." USSG § 3A1.1(b)(1); Doc. No. 306, ¶ 45. As explained in the PSIR, "A two-point enhancement applies because the defendant was aware that victim was a vulnerable victim. Specifically that she was without a fixed address and was a drug user." Doc. No. 306, ¶ 45.

Third, Collier argues the Court erred in applying a 2-level enhancement to counts 2, 3, and 4 for obstruction. At sentencing, the Court heard testimony and evidence related to Collier's obstructive activities after trial. Doc. Nos. 342, 343. The Court took particular care to note Collier's obstruction. See Doc. No. 343, pp. 107, 117. However, it appears the Court only made specific findings of obstructive behavior related to two of Collier's victims, and a district court's

findings on an obstruction enhancement must provide sufficient support with clarity. United States v. Harmon, 944 F.3d 734, 739 (8th Cir. 2019); but cf. id. at 740 ((Stras, J. concurring in part and dissenting in part) ("I would rely on the general principle that district courts need not provide detailed findings as long as there is sufficient evidence in the record for meaningful appellate review.") (citation omitted)). Nevertheless, even assuming without deciding that Collier is correct that the 2-level enhancement for obstruction on counts 2, 3, and 4 were erroneously applied, because of how the offenses are grouped, Collier's total offense level would remain at a 43, and the sentencing guideline range would remain at life.

All told, even if the Court accepted Collier's arguments on this claim as true, and accepted Collier's position that the total base offense level should have a been a 42, the guideline sentencing range, with a criminal history category VI, would have been 360 months to life. Collier was sentenced well within that guideline range. As a result, even when construing all benefit to Collier, Collier cannot establish any prejudice because there is no reasonable probability that he would have received a shorter sentence if McCabe would have successfully raised the sentencing guideline arguments on appeal. See DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (citing United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)) ("If the defendant cannot prove prejudice, [a court] need not address whether counsel's performance was deficient."). Accordingly, Collier's final ineffective assistance of counsel claim as to McCabe is denied.

### IV.   CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Collier's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 413) is **DENIED**. The record decisively refutes all of Collier's ineffective assistance of counsel claims. As such, dismissal without an evidentiary hearing is warranted. See

Calkins v. United States, 795 F.3d 896, 900 (8th Cir. 2015).  This matter is hereby **DISMISSED WITH PREJUDICE** and without an evidentiary hearing.  The Court certifies that an appeal from the denial of the motion may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  Based upon the entire record, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  Therefore, the Court will not issue a certificate of appealability.  Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983); Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).  If Collier desires further review of his motion, he may request a certificate of appealability from a circuit judge of the Eighth Circuit Court of Appeals.

    **IT IS SO ORDERED**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 5th day of October, 2021.

                                  */s/ Peter D. Welte*
                                  Peter D. Welte, Chief Judge
                                  United States District Court